RECEIVED
IN MONROE, LA
MAY 19 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CR. ACTION NO. 07-30022 |
| VERSUS | JUDGE ROBERT G. JAMES |
| MICHAEL L. THOMPSON | MAG. JUDGE KAREN L. HAYES |

### RULING

This is a criminal action brought by the United States of America ("Government") pursuant to the Hobbs Act, 18 U.S.C. § 1951, against Michael L. Thompson ("Thompson"). On February 14, 2008, Thompson filed a Motion to Dismiss Indictment [Doc. No. 39]. On February 21, 2008, the Government filed a Memorandum in Opposition to the Motion to Dismiss. Trial is currently set for January 12, 2009.

For the following reasons, Thompson's Motion to Dismiss is DENIED.

### THE INDICTMENT

On June 12, 2007, a federal grand jury returned a one-count indictment against Thompson. Count 1 charges Thompson with the following:

COUNT 1
18 U.S.C. § 1951
Hobbs Act

A. AT ALL TIMES MATERIAL HEREIN

    1. MICHAEL L. THOMPSON was the Executive Director of the Poverty Point Reservoir District (PPRD).

>   2.  The PPRD is a political subdivision of the State of Louisiana and has as its purpose "the development of the wealth and natural resources of the district by the conservation of soil and water for agricultural, recreational, commercial, industrial, and sanitary purposes." LSA-R.S. 38:3087.3
>
> B.  THE OFFENSE
>
> Beginning on or about the 26th day of September 1997, and continuing until or about the 30th day of June, 2002, in the Western District of Louisiana and elsewhere, the Defendant MICHAEL L. THOMPSON, did knowingly, willfully and unlawfully obstruct, delay, affect and attempt to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, in that Defendant MICHAEL L. THOMPSON unlawfully obtained property, that is, funds of the [PPRD], not due him or his office with consent, said consent being induced and obtained under color of official right, all in violation of Title 18, United States Code, Section 1951 [18 U.S.C. § 1951].

[Doc. No. 2].

On July 30, 2007, Thompson filed a Motion for Bill of Particulars [Doc. No. 18], which the Government opposed. On August 14, 2007, Magistrate Judge Karen L. Hayes granted the Motion for Bill of Particulars in part. On appeal, this Court affirmed Magistrate Judge Hayes' Order, and the Government was required to produce the following:

1)  the dates on which the [G]overnment contends an employee of the [PPRD] performed labor or work for the personal benefit of defendant and billed [PPRD] for those services;

2)  the specific nature of the services allegedly performed for defendant's personal benefit on the various dates set forth above; and

3)  the amounts and dates of each billing by the [PPRD] employee allegedly performed for the personal benefit of defendant.

## LAW AND ANALYSIS

Thompson contends that Count 1 should be dismissed because the Indictment, even when

supplemented by the Bill of Particulars, fails to allege a violation of the Hobbs Act. In the alternative, Thompson contends that the prosecution is untimely.

The Government responds, first, that Thompson's Motion to Dismiss is an improper challenge to the merits of the case against him. The Government further contends that the Hobbs Act is a continuing offense, so its prosecution of Thompson is timely.

Thompson's Motion to Dismiss is governed by Rule 12(b), which provides: "Any defense, objection, or request which is <u>capable of determination without the trial of the general issue</u> may be raised before trial by motion." Fed. R. Crim. P. 12(b) (emphasis added). "[A] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for a trial of the charge on the merits." <u>United States v. Mann</u>, 517 F.2d 259 (5th Cir. 1975) (citing <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956)). Therefore, courts lack the authority under Rule 12 to dismiss an indictment "on the basis of a 'sufficiency-of-the-evidence' defense which raises factual questions embraced in the general issue." <u>Id.</u> at 267 (citing <u>United States v. Brown</u>, 481 F.2d 1035, 1041 (8th Cir. 1973)).

### A.   Sufficiency of the Indictment

The Hobbs Act provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section . . .

3

18 U.S.C. § 1951(a).

In the present case, Thompson attacks the factual basis underlying the Indictment, not the Indictment itself. As this Court previously stated, the Indictment is statutorily sufficient, which is all that is required. In order for the Court to rule favorably for Thompson on his Motion to Dismiss, the Could would be required to consider the factual allegations. The question of whether the Government's evidence will be sufficient to meet its burden of proof at trial is an issue to be determined by the trier of fact, not for the Court in ruling on a Motion to Dismiss.[1]

**B. Statute of Limitations**

Thompson also alleges that he is entitled to dismissal of the charges against him because the applicable five-year statute of limitations has run on most of the criminal conduct alleged. See 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). The Indictment in this case was returned on June 12, 2007, and, thus, Thompson contends that he cannot be charged with any unlawful conduct allegedly occurring prior to June 12, 2002.

On the other hand, the Government contends that Thompson's crime was a continuing offense and that he has properly been charged with all unlawful conduct prior and subsequent to June 12, 2002.

In United States v. Provenzano, 334 F.2d 678 (3rd Cir. 1964), the Third Circuit Court of Appeals faced this precise issue. The defendant in that matter, a labor official, was charged in a

---

[1] The Court expresses no opinion on the underlying merits of the case, but notes that Thompson may move for judgment of acquittal at trial if he believes the Government's evidence is insufficient to carry its burden of proving a Hobbs Act violation.

one-count indictment with Hobbs Act violations spanning the period January 1, 1952, to June 1, 1959. The Government alleged that the victims had made a continuous series of payments as a result of the fears instilled by the defendant and an associate in 1952 and 1953, which continued until June 1, 1959, when the last payment was made. "In other words the 'unit of prosecution' asserted by the Government was based on a single continuous plan of extortion the execution of which commenced in 1952 and which continued until June 1, 1959, when the last payment was made." Id. at 684. In contrast, the defendant argued that each payment made by a victim was a separate offense, was required to be set up as a separate count in a multi-count indictment, and each count required proof by the Government of every element of the Hobbs Act offense, including the instilling of fear of economic harm and the payment of money because of that fear. The Third Circuit agreed with the Government and held that "[t]he payments were the consummation of the extortionate scheme which was a single and unified one. No pertinent issue as to limitation of the action is presented [sic] for the payments were carried well into the post limitation period." Id. at 685.

Although the Fifth Circuit has not addressed this issue, other appellate courts have relied on Provenzano and held that a Hobbs Act violation is a continuing offense which does not present a statute of limitations problem as long as there is evidence of a continuous course of conduct or extortionate scheme, and the Government proves that at least one payment fell within the five-year period. See, e.g., United States v. Forszt, 655 F.2d 101 (7th Cir. 1981) (The final payment, made within the five-year statute of limitations in April 1975, "was simply the final installment in a continuous course of criminal conduct that originated in January 1949."); United States v. Bucci, 839 F.2d 825 (1st Cir. 1988) (Prosecution proved the Hobbs Act violation "by

5

presenting overwhelming evidence that all the payments . . . 'were the consummation of [an] extortionate scheme which was a single and unified one.'") (quoting Provenzano, 334 F.2d at 685).

Thompson contends that Provezano cannot stand in light of the Supreme Court's decision in Touissie v. United States, 397 U.S. 112 (1970). In Touissie, the Supreme Court considered whether the statute requiring male citizens between the ages of 18 and 26 to register for the draft or a related regulation which referred to the duty to register as "continuing" imposed a continuing duty on the defendant to register. The Supreme Court declined to find there was a continuing duty to register. Rather, the Court concluded the five-year statute of limitations began to run five days after the defendant's 18th birthday. The Court explained its considerations in determining when a statute of limitations begins to run:

> In deciding when the statute of limitations begins to run in a given case several considerations guide our decision. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before 'the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose,' United States v. Scharton, 285 U.S. 518, 522, 52 S.Ct. 416, 417, 76 L.Ed. 917 (1932).' United States v. Habig, 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968). We have also said that '(s)tatutes of limitations normally begin to run when the crime is complete.' Pendergast v. United States, 317 U.S. 412, 418, 63 S.Ct. 268, 271, 87 L.Ed. 368 (1943); see United States v. Irvine, 98 U.S. 450, 452, 25 L.Ed. 193 (1879). And Congress has declared a policy that the statute of limitations should not be extended '(e)xcept as otherwise expressly provided by law.' 18 U.S.C. § 3282. These principles indicate that the doctrine of continuing offenses should be applied in only limited circumstances since, as the Court of Appeals correctly observed in this case, '(t)he

> tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term.' 410 F.2d, at 1158. These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.

Id. at 114-15.

After carefully reviewing the language of Toussie, the Court agrees with other district courts that Provenzano and its progeny are still valid. The Court reaches this conclusion based on its determination that, in cases where the defendant is alleged to have "engaged in a single, continuous plan of extortion envisioning multiple payments [or receipt of benefits] over several years . . .Congress would have intended that the offense be treated as a continuing one." United States v. Aliperti, 867 F. Supp. 142, (E.D. N.Y. 1994); see also United States v. Salemme, CR. No. 94-10287-MLW, 1997 WL 37530 at *5 (D. Mass. Jan. 13, 1997) ("A single scheme of Hobbs Act extortion . . . spanning multiple years may be considered a continuing offense for statute of limitations purposes . . . In view of the nature of the crime of extortion, this conclusion is consistent with the Supreme Court's analysis in Toussie.").

Further, the Court's determination finds support in the post-Touisse analysis of the Fifth Circuit Court of Appeals. In United States v. Bustamante, 45 F.3d 933 (5th Cir. 1995), the defendant, a former United States Representative, had been convicted of RICO violations, which are subject to a five-year statute of limitations. On appeal, Bustamante argued that his prosecution for one gratuity related to an investment in San Antonio Video Corporation ("SAVC") was untimely. He argued that the statute of limitations began to run in 1985 when he

7

first accepted the gratuity in the form of a personal guaranty for a bank loan and that it expired in 1990, well before his 1993 indictment. Although mindful of the Touisse principle, the Fifth Circuit rejected his argument, explaining that Bustamante was not "accused of committing a crime that has continuing effects after its completion. Rather, he was charged with accepting illegal gratuities over an extended period of time. . . Bustamante was therefore charged with continuing criminal behavior." Id. at 942. Thus, his prosecution was timely because he continued to receive the benefits of a risk-free investment in SAVC until 1988 when the bank loan was repaid in full.

Similarly, in this case, Thompson is charged with obstructing, delaying, and affecting commerce, and attempting to do so, by extortion over a period of years, from 1997 through June 30, 2002. During this time, Thompson is accused of unlawfully obtaining property not due him, not just once, but through a scheme of extortion that did not conclude until June 30, 2002. In these circumstances, the Court finds that the Indictment against Thompson is timely.

## CONCLUSION

For the foregoing reasons, Thompson's Motion to Dismiss is DENIED.

MONROE, LOUISIANA, this ___19___ day of ___May___, 2008.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

8