UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CR. ACTION NO. 07-30022 |
| VERSUS | JUDGE ROBERT G. JAMES |
| MICHAEL L. THOMPSON | MAG. JUDGE KAREN L. HAYES |

## RULING

This is a criminal action brought by the United States of America ("Government") pursuant to the Hobbs Act, 18 U.S.C. § 1951, against Michael L. Thompson ("Thompson"). On March 16, 2009, Thompson filed a Second Motion to Dismiss Indictment ("Second Motion to Dismiss") [Doc. No. 56]. On March 27, 2009, the Government filed a Memorandum in Opposition to the Second Motion to Dismiss [Doc. No. 58]. On April 7, 2009, with leave of Court, Thompson filed a Reply Memorandum in Support of Defendant's Second Motion to Dismiss Indictment ("Reply") [Doc. No. 61]. On June 29, 2009, oral argument was held, and the Court took the Second Motion to Dismiss under advisement.

For the following reasons, Thompson's Second Motion to Dismiss is DENIED.

## THE INDICTMENT

On June 12, 2007, a federal grand jury returned a one-count indictment against Thompson. Count 1 charges Thompson with the following:

COUNT 1
18 U.S.C. § 1951
Hobbs Act

1

A. AT ALL TIMES MATERIAL HEREIN

1. MICHAEL L. THOMPSON was the Executive Director of the Poverty Point Reservoir District (PPRD).

2. The PPRD is a political subdivision of the State of Louisiana and has as its purpose "the development of the wealth and natural resources of the district by the conservation of soil and water for agricultural, recreational, commercial, industrial, and sanitary purposes." LSA-R.S. 38:3087.3

B. THE OFFENSE

Beginning on or about the 26th day of September 1997, and continuing until or about the 30th day of June, 2002, in the Western District of Louisiana and elsewhere, the Defendant MICHAEL L. THOMPSON, did knowingly, willfully and unlawfully obstruct, delay, affect and attempt to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, in that Defendant MICHAEL L. THOMPSON unlawfully obtained property, that is, funds of the [PPRD], not due him or his office with consent, said consent being induced and obtained under color of official right, all in violation of Title 18, United States Code, Section 1951 [18 U.S.C. § 1951].

[Doc. No. 2].

On July 30, 2007, Thompson filed a Motion for Bill of Particulars [Doc. No. 18], which the Government opposed. On August 14, 2007, Magistrate Judge Karen L. Hayes granted the Motion for Bill of Particulars in part. [Doc. No. 22]. On appeal, this Court affirmed Magistrate Judge Hayes' Order, and the Government was required to produce the following:

1) the dates on which the [G]overnment contends an employee of the [PPRD] performed labor or work for the personal benefit of defendant and billed [PPRD] for those services;

2) the specific nature of the services allegedly performed for defendant's personal benefit on the various dates set forth above; and

3) the amounts and dates of each billing by the [PPRD] employee allegedly performed for the personal benefit of defendant.

[Doc. Nos. 22 & 29].

The Government complied with the Court's order and produced information and evidence, which allegedly shows that Thompson paid Joe Cleveland ("Cleveland"), a contractor, with the PPRD funds for personal services provided to Thompson. According to the Government, Cleveland will testify that he performed work for Thompson because he was afraid that Thompson would fire his wife, Kathy Cleveland ("Mrs. Cleveland"), Thompson's secretary, and that Thompson would refuse to contract with Cleveland to perform the PPRD work.

**LAW AND ANALYSIS**

Thompson contends that Count 1 should be dismissed because the Indictment, even when supplemented by the Bill of Particulars, fails to constitute a violation of the Hobbs Act. Thompson argues that Cleveland was the actual victim of the extortion, but he has not been deprived of property, as required by the plain language of the statute. Based on the Government's theory, Thompson argues that Cleveland, the victim, was paid by the PPRD for alleged personal services provided to Thompson and, thus, Cleveland was not deprived of property. Thompson argues, further, that the identified/purported victim, the PPRD, which was deprived of funds, was not subject to extortion.

The Government responds that it is not uncommon in Hobbs Act prosecutions for the victim to receive reimbursement from the governmental entity and that it is also not uncommon for the victim to receive more than he gives up. Even though the victim does not suffer a financial loss in these cases, the cases stand. The Government contends that Cleveland did lose property–his labor and his right to make the business decision whether to work for Thompson or not. The Government further contends that the PPRD was deprived of property and was also a

victim.

In addition to the parties' arguments in brief, at the oral argument in this matter, the Court asked counsel to address two questions:

(1) If the Government relies on proof at trial that Defendant committed a Hobbs Act violation by obtaining the property of Joe Cleveland (as opposed to the PPRD), is there a constructive amendment to the Indictment?

(2) If the Government relies on proof, consistent with the Indictment, that Defendant committed a Hobbs Act violation by obtaining the property of [the] PPRD, must the Government show that [the] PPRD (as opposed to [] Cleveland) "consented" to providing the property?

[Doc. No. 65]. Addressing the second question first, both parties agreed that the Government will not seek to prove that the PPRD consented to the provision of funds because such a factual presentation would sustain an indictment for embezzlement, not a Hobbs Act violation.

With regard to the first question, the parties remained divided. The Government contends that there is no variance from the Indictment. The Indictment explains who the ultimate victim is, but the Government did not attempt to explain how the PPRD became the ultimate victim.

Further, the Government points out that the Indictment has now been supplemented by the Bill of Particulars to show that the PPRD funds were ultimately expended to reimburse Cleveland for the time and effort that he spent performing the personal work for Thompson.

Additionally, the Government contends that, to constitute a constructive amendment, a variance must be a modification of an essential element of the Indictment which allows the jury to convict on a materially different theory or set of facts than that with which the defendant was charged. In this case, the evidentiary presentation will simply explain the allegations in the

Indictment.

Thompson contends that it is a constructive amendment of the Indictment for the Government to proceed on the theory that Cleveland was the person whose property was deprived or taken from him with coercion. Thompson argues that his position is consistent with the plain language of the Hobbs Act, which requires that the person coerced is also the person whose property has to be taken.

### A. Motions to Dismiss

In the Fifth Circuit, "'[t]he propriety of granting a motion to dismiss an indictment under [FED. R. CRIM. P.] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.'" United States v. Korn, 557 F.2d 1089, 1090 (5th Cir. 1977) (quoting United States v. Miller, 491 F.2d 638, 647 (5th Cir. 1974)); see also United States v. Flores, 404 F.3d 320, 324 (5th Cir. 2005). "[A] question of law presented in a case involving undisputed facts can be determined without a trial of the general issue," and a district court is, thus, authorized to rule on such a motion to dismiss under Rule 12. Flores, 404 F.3d at 325. A "district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986) (other citations and internal quotation marks omitted), quoted with approval in Flores, 404 F.3d at 324 n. 6. In this case, Thompson argues that, even if the facts alleged by the Government are proven, as a matter of law, those facts do not constitute a Hobbs Act violation. Thus, Thompson's arguments are properly addressed in a pre-trial motion.

5

B.  **Hobbs Act**

The Hobbs Act provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a). "Extortion" is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence. The Act outlaws such interference 'in any way or degree.'" Stirone v. United States, 361 U.S. 212, 215 (1960) (quoting 18 U.S.C. § 1951(a)).

1.  **Are the Government's Allegations Sufficient to Support a Hobbs Act Violation?**

In previous rulings in this case, the Court has determined that the Indictment is statutorily sufficient: the Government properly alleges that Thompson did "knowingly, willfully and unlawfully obstruct, delay, affect and attempt to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion as those terms are defined in Title 18, United States Code, Section 1951." [Doc. No. 1]; see United States v. Hoover, 467 F.3d 496, 500 (5th Cir. 2006) ("[T]he indictment must allege the essential elements of the charged offense, [but] '[i]t is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges.'") (quoting United States v.

Caldwell, 302 F.3d 399, 412 (5th Cir. 2002) (internal quotation marks and additional citation omitted)).

Nevertheless, Thompson moves to dismiss the Indictment against him a second time,[1] this time under the theory that the factual allegations, even if proven at trial, will not suffice to sustain a Hobbs Act violation.

As is typical in the prosecution of a state or local official, the Government proceeds under the theory that Thompson committed a Hobbs Act violation by extortion. The Fifth Circuit Pattern Jury Instructions set forth the elements of a Hobbs Act prosecution under this theory: (1) that the defendant "obtained [(or attempted to obtain)] property from another with that person's consent"; (2) that the defendant "did so under color of official right"; and (3) that the defendant's "conduct interfered with [affected] interstate commerce." FIFTH CIRCUIT PATTERN INSTRUCTION (CRIMINAL), § 2.74 (West 2001).

Under this theory of prosecution, "a conviction under the Hobbs Act may be sustained upon a finding that property was unlawfully obtained under color of official right, absent a showing of 'actual or threatened force, violence or fear.'" United States v. Williams, 621 F.3d 123, 124 (5th Cir. 1980) (quoting 18 U.S.C. § 1951(b)(2)); see also United States v. Dozier, 672 F.2d 531, 536, 539 (5th Cir. 1982) (citation omitted); FIFTH CIRCUIT PATTERN JURY INSTRUCTION (CRIMINAL), § 2.74 (West 2001) (Notes following the Instruction). This is so because the "coercive element is supplied by the existence of the public office itself." Williams, 621 F.2d at 124 (citations omitted).

---

[1] In his first Motion to Dismiss, Thompson argued that the charges against him should be dismissed based on the applicable statute of limitations and the insufficiency of the Indictment. The Court denied his first Motion to Dismiss. [Doc. No. 47].

7

Additionally, though the Hobbs Act does not define "obtaining" or "property," the Supreme Court has held that to "obtain" the property of another, a defendant must deprive the victim and acquire the property. Scheidler v. Nat'l Org. of Women, 537 U.S. 393, 404 (2003) ("Most importantly, we have construed the extortion provision of the Hobbs Act at issue in these cases to require not only the deprivation but also the acquisition of property."). "Property" may include intangibles, as well as money and other tangibles. See, e.g., United States v. Stephens, 964 F.2d 424, 433 n.20 (5th Cir. 1992) ("The concept of property under the Hobbs Act has not been limited to physical or tangible things; the right to make business decisions and to solicit business free from wrongful coercion is a protected property right.") (citations to collected cases omitted); United States v. Lewis, 797 F.2d 358, 364 (7th Cir. 1986) ("[T]he 'property' of which the victim is deprived need not be tangible, but . . . may be no more than the right to make his business decisions free of threats or coercion, or other intangible rights.") (citations omitted); *see also* FIFTH CIRCUIT PATTERN INSTRUCTION (CRIMINAL), § 2.74 (West 2001) ("The term 'property' includes money and other tangible and intangible things of value.").

If, as it contends, the Government proves that Thompson obtained Cleveland's services with Cleveland's consent under color of official right and that this alleged extortion interfered with or affected commerce, then the Government will have met the requirements for proving a Hobbs Act violation. Consistent with the Indictment, the Government has indicated that it will produce evidence at trial that the PPRD funds were obtained and used by Thompson to pay Cleveland and that the use of these funds supplies the essential element of the interstate commerce connection. Thompson's Second Motion to Dismiss is DENIED.

8

## 2. Will the Government's Presentation of Evidence Result in a Constructive Amendment to the Indictment?

Having concluded previously that the Indictment in this matter is statutorily sufficient and that the Government's factual allegations, if proven, constitute a Hobbs Act violation, the Court now turns to the question it raised *sua sponte*: whether the Government's presentation of evidence, as set forth in the Bill of Particulars and pleadings before this Court will constitute a constructive amendment to the Indictment.

Only the grand jury can broaden an indictment through amendment. United States v. Salvatore, 110 F.3d 1131, 1145 (5th Cir. 1997). The United States Court of Appeals for the Fifth Circuit has explained:

> A constructive amendment occurs when the government changes its theory during trial so as to urge the jury to convict on a basis broader than that charged in the indictment, or when the government is allowed to prove "an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment." [Salvatore, 110 F.3d at 1145] (quoting United States v. Slovacek, 867 F.2d 842, 847 (5th Cir.1989)). In United States v. Young, 730 F.2d 221, 223 (5th Cir. 1984), we explained that "[t]he accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the crime charged."
>
> If, however, the indictment "contained an accurate description of the crime, and that crime was prosecuted at trial, there is no constructive amendment." United States v. Mikolajczyk, 137 F.3d 237, 244 (5th Cir.1998) . . . We still must determine whether the variance, if any, was harmless. See United States v. Puig-Infante, 19 F.3d 929, 936 (5th Cir. 1994). In this inquiry, "our concern is that the indictment notifies a defendant adequately to permit him to prepare his defense, and does not leave the defendant vulnerable to a later prosecution because of failure to define the offense with particularity." Id. (internal quotation omitted).

United States v. Robles-Vertiz, 155 F.3d 725, 728 (5th Cir. 1998). Further, while "it is a settled rule that a bill of particulars cannot save an invalid indictment," Russell v. United States, 369

U.S. 749, 770 (1962), the bill of particulars may contain facts not alleged in the indictment. *See* United States v. Rigas, 490 F.3d 208, 237 (2d Cir. 2007) ("[T]he bill's purpose is to advise the defendant of the specific acts of which he is accused;" . . . Thus, a bill of particulars may contain facts not alleged in the indictment.") (citations omitted).

In this case, the Government intends to prove at trial, consistent with the theory presented to the grand jury and in the Bill of Particulars, that Thompson obtained the services of Cleveland with his consent under color of official right and that Thompson ultimately also obtained the funds of the PPRD to pay Cleveland. Thus, as charged in the Indictment, the Government will allegedly prove that Thompson obtained the property of "another," Cleveland, with "that person's consent" and, as factually alleged in the Indictment, the Government will allegedly prove that Thompson deprived the PPRD of funds through this extortion scheme. To the extent that the Indictment is ambiguous and could be read to suggest that the Government would seek to prove that the PPRD was the victim of the extortion and was deprived of funds with its consent, the Government has clarified, through the Bill of Particulars and in oral argument, that this was not the theory presented to the grand jury, nor is it the theory that will be presented at trial. Rather, the PPRD was included as the ultimate victim of the scheme[2] and because the use of the funds allegedly resulted in the required connection to interstate commerce. Under these circumstances, any factual variance from the language of the Indictment is not a constructive amendment resulting in prejudice to Thompson, but a "mere variation[] between the indictment

---

[2] The Government was not required to list the PPRD as a "victim," but has indicated at oral argument that it did so to indicate the connection to interstate commerce.

and proof."³  *United States v. Millet*, 123 F.3d 268, 272 (5th Cir. 1997).

## CONCLUSION

For the foregoing reasons, Thompson's Second Motion to Dismiss [Doc. No. 56] is DENIED, and the Government may proceed to trial.

MONROE, LOUISIANA, this 13th day of July, 2009.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

³Either the evidence or a jury instruction can effectuate a constructive amendment to the indictment. <u>United States v. Munoz</u>, 150 F.3d 401, 417 (5th Cir. 1998) (citing <u>Millet</u>, 123 F.3d at 272). However, the Court will ensure that the jury instructions require the Government to prove that Thompson obtained Cleveland's property with Cleveland's consent.